**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KHALIL TRAYNHAM<br>5507 Vine St.<br>Philadelphia, PA 19139 | : <br> : <br> : <br> : | CIVIL ACTION |
|        Plaintiff,<br>   v. | : <br> : <br> : | CASE NO.: |
| THE HERTZ CORPORATION<br>d/b/a Hertz Car Rental<br>8501 Williams Rd.<br>Estero, FL 33928 | : <br> : <br> : <br> : <br> : | |
|       Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Khalil Traynham (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against the Hertz Corporation (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq.*), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII.

3.      There lies supplemental and/or ancillary jurisdiction over Plaintiff's state and local law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

4.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

5.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit under Title VII within 90 days of receiving a right-to-sue letter from the EEOC.

7.      Plaintiff dual-filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR"). Plaintiff properly exhausted his administrative proceedings before initiating this action by timely

2

filing his Charge with the PHRC and PCHR, and by filing the instant lawsuit after the Charge was pending with the PHRC and PCHR for over 1 (one) year.[1]

## PARTIES

8.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.      Plaintiff is an adult individual, with an address as set forth in the caption.

10.     Defendant is a world-wide rental car company with a location at the above-captioned address in Philadelphia, PA.

11.     At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff is an adult gay male.

14.     Plaintiff was hired by Defendant in or about May of 2023 as a Customer Service Agent, working out Defendant's 1 Arrivals Rd., Philadelphia, PA location.

15.     Plaintiff's duties while employed with Defendant as a Customer Service Agent included sitting at a car exit booth, moving rental cars, processing payment for customers, and assisting customers with filling out rental contracts.

---

[1] The PFPO is interpreted identically to the PHRA in terms of administrative exhaustion. In *Jones v. Foods on First III Inc.*, 2025 PA Super 184, 345 A.3d 231, 243, the PA Superior Court held a plaintiff has two years from the date of receiving a case closure letter from the PHRC to bring claims under the PHRA and PFPO, but that a plaintiff can bring these claims before receiving that letter so long as she waits one year from filing the charge. This same reasoning was adopted in the EDPA in *Jordan v. Nextus Billing Sols.*, 802 F. Supp. 3d 736, 737-739 (E.D. Pa. 2025).

16. Throughout Plaintiff's tenure with Defendant, he was supervised by several members of Defendant's management including District Manager – Chris Zelensky ("Zelensky"), Assistant District Manager – Michael Costello ("Costello"), and Supervisor – Branas Cooper ("Cooper").

17. During his employment with Defendant, Plaintiff was a hardworking and dedicated employee who performed his job well, received accolades for his customer service, and was informed that he was management material by Defendant's management on several occasions.

18. Despite his hard work and dedication, Plaintiff's work environment was tainted by the harassment, discrimination, and retaliation that he was subjected to during the last approximate year of his employment though sexual harassment, sexual orientation discrimination, and retaliation for complaining of the same.

19. The mistreatment Plaintiff was subjected to included threatening, offensive, homophobic, and blatant sexual harassment by Defendant's employees. Specific examples of the sexual orientation/gender-based discrimination and hostilities that Plaintiff was subjected are described more fully in the next several paragraphs.

20. Within months of his hire, Plaintiff became friendly with a fellow Customer Service Agent, Judea Taylor (female, hereinafter "Taylor").

21. However, Taylor misinterpreted Plaintiff's friendship as romantic and made advances towards him while at work, such as trying to physically feed Plaintiff food out of her hand, inviting him to her house, and telling other coworkers that she was pursuing him romantically.

22. Plaintiff rejected Taylor's clearly romantic gestures.

23.     After Plaintiff made clear to Taylor that he did not want to have a romantic relationship with her, Taylor proceeded to ignore Plaintiff for several weeks and treated him in a hostile manner.

24.     In or about the end of October of 2023, after Plaintiff had already rejected Taylor's romantic advances, Taylor approached Plaintiff while at work visibly agitated and informed him that she knew Plaintiff did not like her and was not interested in her.

25.     Plaintiff clarified to Taylor that he did not have any problems with her but was in a relationship and not interested in her romantically.

26.     Sometime at the end of October 2023, Plaintiff was informed by Zelensky that Taylor reported him to Human Resources ("HR") for misconduct.

27.     Zelensky did not provide Plaintiff with the details of Taylor's complaint and informed him that HR did not intend to discipline him, but they would like him to avoid Taylor at work going forward based on misinformation from Taylor that she had a restraining order against him.

28.     Taylor did not have a restraining order against Plaintiff and could not have possibly provided documentation to show otherwise.

29.     However, HR did not investigate further and for the remainder of Plaintiff's tenure with Defendant, he was made to move from his posts each shift to placate/accommodate Taylor.

30.     In or about mid-December 2023, Taylor went out of her way to drive through Plaintiff's booth (other booths were open) and unprovokedly cursed at him, called him homophobic slurs including "faggot" and "homo," and threatened to have him physically harmed by other males.

31.     In response to Taylor's aforesaid hostile and retaliatory behavior, Plaintiff filed a complaint about the aforesaid harassing behavior and hostile work environment with Defendant's Human Resources ("HR") department.

32.     In a subsequent conversation with Defendant's HR department regarding his aforesaid complaint, Plaintiff explained in detail all the homophobic comments and sexually harassing behaviors toward him from Taylor.

33.     Plaintiff explained that he believed that Taylor was being homophobic towards him because he had previously declined her romantic advances and sexually harassing behaviors, such as trying to hand feed him while at work just several months earlier.

34.     To Plaintiff's knowledge, Defendant's HR department did very little to address Plaintiff's aforesaid complaint, as Taylor was allowed to remain employed all while continuing to treat him in a harassing and discriminatory manner whenever she encountered him.

35.     As a result of the foregoing, Plaintiff reported Taylor's continued homophobic and harassing behavior to Defendant's management and HR on several occasions but was told to just avoid her.

36.     In the aftermath of his complaints, Plaintiff felt as if Defendant did not take his complaints seriously based on outdated stereotypes concerning men and power dynamics where it concerns women.

37.     Plaintiff also believed, based on his observations and experience, that the lack of response from HR (regarding his complaints about Taylor) emboldened Taylor to continue her harassment towards him.

38.     In or about April of 2024, Plaintiff believes that his supervisor, Cooper, propositioned him sexually while on-the-job.

39.     For context, Plaintiff walked past Cooper on his way to Defendant's locker room to use one of the urinals located in the locker room.

40.     Approximately two (2) minutes after entering the locker room, while Plaintiff was exiting the locker room after using the urinal, Cooper entered the common locker room space with his pants unzipped, partially pulled down, and with his undergarments visible.

41.     Cooper's pants were already open even though he was not yet in the urinal area.

42.     Cooper tried to make eye contact with Plaintiff, but he [Plaintiff] was extremely uncomfortable, so he kept his head down and proceeded out of the door.

43.     Following this encounter with Cooper, Plaintiff walked over to Defendant's cafeteria and informed a coworker, Dayshira Hospkins, about what transpired in the locker room.

44.     When Plaintiff saw Cooper later that same day during his shift, he expressed concern about the earlier incident and made it known that he felt uncomfortable; however, rather than apologize for his actions, Cooper simply smirked and said something to the effect of "I did not know anyone else was in here" – which Plaintiff knew was false.

45.     In addition to the foregoing discrimination, retaliation and sexual harassment, there were several times throughout Plaintiff's employment that Costello and Zelensky commended Plaintiff for his stellar job performance and encouraged him to apply for management positions.

46.     However, after applying for several positions during the last approximate year of his employment, he was rejected from each position without explanation and despite not having any performance issues and having over fifteen (15) years of management experience.

47. Plaintiff learned from another co-worker, Ruth (last name unknown), that rumors were going around that Defendant's management would never promote him because of his sexual orientation.

48. Upon information and belief, Plaintiff was only encouraged to apply for management positions to make him think that he could grow within the company so that he would continue to go above and beyond what his current job duties entailed at the time.

49. For context, Plaintiff was known to come in early for his shifts, stay late, and take on tasks that were not part of his job description.

50. Plaintiff believes and avers that Defendant did not want him to advance within the company because of his sexual orientation and/or his complaints of sexual harassment and sexual orientation discrimination.

51. In or about August of 2024, Plaintiff arrived to work one day for his scheduled shift and was instructed by Cooper not to clock in.

52. Cooper then notified Plaintiff that he needed to meet with Costello.

53. Plaintiff met with Costello who had an unknown person from HR on the phone.

54. During this meeting, HR informed Plaintiff that he was terminated effective immediately for allegedly leaving his post a few days earlier and moving a rental car without permission.

55. Defendant alleged that the car that Plaintiff moved/re-parked was missing for several days and had been found near another one of Defendant's car lot miles away.

56. Plaintiff explained that Cooper had actually called him and instructed him to leave his post and move the car.

57. After doing as Cooper instructed, Plaintiff returned to his booth position within approximately fifteen (15) minutes of moving the car.

58. Defendant admitted that they reviewed camera footage and saw that Plaintiff returned to his post shortly after moving the car.

59. Defendant also conceded that camera footage showed that a man, who was clearly not Plaintiff had dropped the car off at the second location miles away.

60. Despite all of this, Defendant's management still terminated Plaintiff, insisting that they had to because he was the last employee who drove the car and Cooper denied instructing him to do so.

61. Defendant was unwilling to listen to Plaintiff and/or further investigate Plaintiff's defense and affirmed his termination.

62. Plaintiff was completely blindsided by his termination, as he had performed well in his role and had permission to take the action for which he was ultimately terminated.

63. In fact, shortly before his termination, Plaintiff had earned an award for his stellar performance and customer service.

64. Additionally, other employees such as Taylor had significant performance issues and lengthy disciplinary records, but they were not terminated like Plaintiff.

65. Based on the foregoing, Plaintiff believes that he was terminated by Defendant for discriminatory and/or retaliatory reasons under Title VII (and state law).

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Sexual Orientation Discrimination; [2] Retaliation)**

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. Plaintiff was subjected to a hostile work environment through disparate treatment and discriminatory comments because of his sexual orientation and/or complaints about sexual orientation discrimination.

68. Plaintiff applied for several promotions between February of 2024 and May of 2024, for which he was not hired/selected for promotion, despite having 15 years of management experience.

69. In or about August 2024, Plaintiff was abruptly terminated for completely pretextual reasons (discussed *supra*).

70. Plaintiff believes and avers that his sexual orientation was a motivating or determinative factor in Defendant's decisions to (1) not hire him for several positions in 2024[2]; and (2) terminate his employment in or about August 2024.

71. Plaintiff also believes and therefore avers that Plaintiff was not promoted into/hired for several positions in 2024[3] and ultimately terminated in or about August 2024 because of his complaints of sexual orientation discrimination.

72. Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of Title VII.

**COUNT II**
**Violations of the PFPO**
**([1] Sexual Orientation Discrimination; [2] Retaliation)**

73. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[2] Plaintiff only brings this cause of action for any promotions that he was denied after February 8, 2024.

[3] Plaintiff only brings this cause of action for any promotions that he was denied after February 8, 2024.

74.     Plaintiff re-asserts the same claims as set forth in Count I herein, as they constitute the same violations of the Philadelphia Fair Practices Ordinance ("PFPO").

## COUNT III
## Violations of the PHRA
## ([1] Sexual Orientation Discrimination; [2] Retaliation)

75.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76.     Plaintiff was subjected to a hostile work environment through disparate treatment and discriminatory comments because of his sexual orientation and/or complaints about sexual orientation discrimination.

77.     In or about August 2024, Plaintiff was abruptly terminated for completely pretextual reasons (discussed *supra*).

78.     Plaintiff believes and avers that his sexual orientation was a motivating or determinative factor in Defendant's decision to terminate his employment.

79.     Plaintiff also believes and therefore avers that Plaintiff was terminated in August 2024 because of his complaints of sexual orientation discrimination.

80.     Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of the PHRA.

## COUNT IV
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
## ([1] Gender Discrimination & [2] Retaliation)

81.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82.     Plaintiff is a male.

11

83.     Plaintiff complained of being subjected to sexual harassment by a female colleague, Taylor, in December of 2023.

84.     Taylor had also complained about misconduct by Plaintiff, after he had rejected her sexual advances and made clear that he did not want to engage in a relationship with her.

85.     Plaintiff's concerns of sexual harassment and sexual orientation discrimination were never properly investigated or remedied and were treated with much less concern and importance as compared to Taylor's complaint about Plaintiff, such that Plaintiff felt as if Defendant did not take his complaints seriously based on outdated stereotypes concerning men and power dynamics where it concerns women.

86.     Based on his observations and experience, that the lack of response from HR (regarding his complaints about Taylor) emboldened Taylor to continue her harassment towards him.

87.     Following his complaints of sexual harassment, Plaintiff applied for several promotions between February of 2024 and May of 2024, for which he was not hired/selected for promotion, despite having 15 years of management experience.

88.     In or about August 2024, Plaintiff was abruptly terminated for completely pretextual reasons (discussed *supra*).

89.     Upon information and belief, other female employees, such as Taylor, had significant performance issues and lengthy disciplinary records, but they were not terminated like Plaintiff (who was terminated over one alleged infraction).

90.     Plaintiff believes and avers that his gender was a motivating or determinative factor in Defendant's decision to terminate his employment in or about August 2024.

91.     Plaintiff also believes and therefore avers that Plaintiff was not promoted into/hired for several positions in 2024[4] and ultimately terminated in or about August 2024 because of his complaints of sexual harassment.

92.     Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of Title VII.

## COUNT V
## Violations of the PFPO
### ([1] Gender Discrimination & [2] Retaliation)

93.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

94.     Plaintiff re-asserts the same claims as set forth in Count IV herein, as they constitute the same violations of the Philadelphia Fair Practices Ordinance ("PFPO").

## COUNT VI
## Violations of the PHRA
### ([1] Gender Discrimination & [2] Retaliation)

95.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96.     Plaintiff is a male.

97.     Plaintiff complained of being subjected to sexual harassment by a female colleague, Taylor, in December of 2023.

98.     Taylor had also complained about misconduct by Plaintiff, after he had rejected her sexual advances and made clear that he did not want to engage in a relationship with her.

99.     Plaintiff's concerns of sexual harassment and sexual orientation discrimination were never properly investigated or remedied and were treated with much less concern and

---

[4] Plaintiff only brings this cause of action for any promotions that he was denied after February 8, 2024.

importance as compared to Taylor's complaint about Plaintiff, such that Plaintiff felt as if Defendant did not take his complaints seriously based on outdated stereotypes concerning men and power dynamics where it concerns women.

100.    Based on his observations and experience, that the lack of response from HR (regarding his complaints about Taylor) emboldened Taylor to continue her harassment towards him.

101.    In or about August 2024, Plaintiff was abruptly terminated for completely pretextual reasons (discussed *supra*).

102.    Upon information and belief, other female employees, such as Taylor, had significant performance issues and lengthy disciplinary records, but they were not terminated like Plaintiff (who was terminated over one alleged infraction).

103.    Plaintiff believes and avers that his gender was a motivating or determinative factor in Defendant's decision to terminate his employment in or about August 2024.

104.    Plaintiff also believes and therefore avers that Plaintiff was terminated in or about August 2024 because of his complaints of sexual harassment.

105.    Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's

14

illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

15

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated:  April 9, 2026

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Khalil Traynham | : | CIVIL ACTION |
| v. | : | |
| The Hertz Corporation d/b/a Hertz Car Rental | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 4/9/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                      Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?      Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A. *Federal Question Cases:*

- ☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2.  FELA
- ☐ 3.  Jones Act-Personal Injury
- ☐ 4.  Antitrust
- ☐ 5.  Wage and Hour Class Action/Collective Action
- ☐ 6.  Patent
- ☐ 7.  Copyright/Trademark
- ☐ 8.  Employment
- ☐ 9.  Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

B. *Diversity Jurisdiction Cases:*

- ☐ 1.  Insurance Contract and Other Contracts
- ☐ 2.  Airplane Personal Injury
- ☐ 3.  Assault, Defamation
- ☐ 4.  Marine Personal Injury
- ☐ 5.  Motor Vehicle Personal Injury
- ☐ 6.  Other Personal Injury *(Please specify)*:_____
- ☐ 7.  Products Liability
- ☐ 8.  All Other Diversity Cases:  *(Please specify)*_____
           _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)                                    CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| TRAYNHAM, KHALIL | THE HERTZ CORPORATION D/B/A HERTZ CAR RENTAL |
| **(b)** County of Residence of First Listed Plaintiff    Philadelphia    *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    Lee    *(IN U.S. PLAINTIFF CASES ONLY)*    NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*    Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com | Attorneys *(If Known)* |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability |  | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability |  | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 835 Patent – Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability |  | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 710 Fair Labor Standards Act |  | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury – Medical Malpractice | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |  | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
|  |  | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |

| | | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
|---|---|---|---|---|

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
|---|---|---|---|---|---|
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** |  |  | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee |  | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations | [ ] 530 General |  | [ ] 871 IRS—Third Party 26 USC 7609 |  |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** |  | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application |  |  |
|  | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions |  |  |
|  |  | [ ] 550 Civil Rights |  |  |  |
|  |  | [ ] 555 Prison Condition |  |  |  |
|  |  | [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000)

Brief description of cause:
Violations of Title VII, PHRA and the PFPO.

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**  *(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE  4/9/2026          SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____